**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**
_____

**ROBERT DUKES, 12-B-1938,**

                **Petitioner,**

    **-vs-**

**HAROLD GRAHAM,**

                **Respondent.**
_____

         **No. 16-CV-0918(LJV)(HKS)**
         **Report and Recommendation**


## <u>REPORT AND RECOMMENDATION</u>

This case was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1) for all pre-trial matters and to hear and report upon dispositive motions.  (Dkt. #19)


*Pro se* petitioner Robert Dukes ("Petitioner"), an inmate of the New York State Department of Corrections and Community Supervision ("NYSDOCCS"), has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging the constitutionality of his conviction in Yates County Court of one count of Course of Sexual Conduct Against a Child in the First Degree (N.Y. Penal L. § 130.75(1)(a)), three counts of Rape in the First Degree (N.Y. Penal L. § 130.35(1)), one count of Criminal Sexual Act in the First Degree (N.Y. Penal L. § 130.50(1)), and one count of Endangering the Welfare of a Child (N.Y. Penal L. § 260.10(1)). Dkt. #1.

1

The factual summary that follows derives from the parties' representations contained in the following submissions: Petition dated November 12, 2016 (Dkt. #1); Supplement to Petition filed November 21, 2016 (Dkt. #3); Respondent's Memorandum of Law in Opposition (Dkt. # 9-1); the State Court Records and Transcripts of the County Court Proceedings (filed under seal 5/23/2017); [1] and Petitioner's Reply Brief (Dkt. #13).

## Factual Background and Procedural History

Petitioner's conviction stems from the repeated sexual assault of his girlfriend's daughter from the time the victim ("S.M.") was 8 years old until she reported the abuse to authorities at age 17.

Following his conviction by jury trial, the trial court adjudicated Petitioner a predicate violent sex offender and sentenced him to an aggregate prison term of 40 years, plus 20 years of post-release supervision. S. 3-16.

Before perfecting his appeal, Petitioner filed a *pro se* motion to vacate the judgment pursuant to N.Y. Crim. Proc. L. § 440.10, alleging, in relevant part, that his trial counsel was ineffective because he did not allow Petitioner to testify at trial. State Court Records ("S.R.") 1-39.  The Yates County Court denied the § 440 motion in its entirety.  S.R. 47-50.   With respect to Petitioner's ineffective counsel claim, the court

---

[1] The transcripts consist of Petitioner's plea proceeding dated January 31, 2012 ("P.), a hearing concerning the admissibility of evidence of Petitioner's criminal record ("H."), trial transcript ("T."), and sentencing ("S.").

concluded that his allegation was unsupported by any evidence, and the record showed that there was no reasonable possibility that Petitioner's allegation was true. The court observed that when trial had commenced, it stated in Petitioner's presence that only one person appeared on the defense witness list and that person was not Petitioner. And, at request of defense counsel, the trial court instructed the jury that Petitioner was not required to testify, and admonished the jury that it should draw no inference unfavorable to Petitioner based on his decision not to testify. The § 440 court further noted "the results of the of the *Sandoval* hearing in the case at bar for if the defendant testified, the People would have made the jury aware of a felony conviction and two misdemeanor convictions." S.R. 50. Petitioner sought leave to appeal the denial of his § 440 motion, which the Appellate Division denied. S.R. 51-71, 85.

Petitioner then filed a direct appeal to the Appellate Division, Fourth Department, in which he raised, *inter alia*, the following claims: (1) Petitioner should have been assigned replacement counsel; (2) the evidence was legally insufficient to support the verdict; (3) Petitioner was denied the effective assistance of counsel; and (4) Petitioner was denied a fair trial due to prosecutorial misconduct. S.R. 272-330. The Appellate Division unanimously modified the judgment on the law on grounds not relevant to the instant Petition, and as modified, affirmed the judgment. *People v. Dukes*, 122 A.D.3d 1370 (4th Dep't 2014). The Court of Appeals denied leave to appeal. 26 N.Y.3d 928 (2015).

Petitioner now seeks habeas relief on the following grounds: (1) the trial court should have granted his request for replacement counsel; (2) the evidence was legally insufficient to support his conviction; (3) he was denied the effective assistance of counsel; and (4) the prosecutor's misconduct denied him a fair trial. Dkt. #1.

For the reasons that follow, the Court finds that Petitioner's claims should be denied, and the Petition be dismissed.

## Discussion

### I.    General Legal Principles

#### A.    Standard of Review

A district court shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(a).  Errors of state law are thus not subject to federal habeas review.   *E.g., Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.").

Federal habeas review of state court decisions is governed by the standard set forth in the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2241 *et seq.*, which provides that "[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state

court shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(1), (2).

A state court decision is "contrary to" established federal law if the state court arrives at a conclusion on a question of law that is opposite to that reached by the Supreme Court, or if the state court adjudicates essentially the same facts as a prior Supreme Court case but reaches an opposite result. *See Williams v. Taylor*, 529 U.S. 362, 405-06 (2000) (citations omitted). A state court decision is an "unreasonable application" of established federal law if (1) the state court correctly identifies the relevant legal principle but unreasonably applies it to a set of facts; (2) the state court unreasonably extends an existing principle to a new context where it should not apply; or (3) the state court refuses to extend an existing principle to a context where it should be extended. *Williams*, 529 U.S. at 407. Any factual determination made by the state court is presumed correct unless the habeas petitioner can rebut that presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

5

## II.　　Petitioner's Claims for Relief

### A.　　Motion to Amend the Petition

On September 27, 2018, nearly two years after his Petition was filed, Petitioner filed a Motion to "Supplement Case for Habeas Corpus." Dkt. ##16, 21. Therein, he raises a new claim of ineffective assistance of counsel based upon his attorney's purported failure to conduct a proper investigation and obtain an expert witness on rape trauma. *Id.* The Court therefore construes this motion as one to amend the Petition.

The claims raised in the initial Petition were timely filed within the one-year limitations period set forth in 28 U.S.C. § 2244(d)(1). In contrast, Petitioner's new ineffective assistance of trial counsel claims, set forth in his Motion to Amend, are not timely in that they were first raised over two years after the one-year statute of limitations expired. *See* Dkt. ## 1, 16, 21.[2]　These new claims can be rendered timely only if they relate back to the original Petition.　Rule 15 of the Federal Rules of Civil Procedure provides that "[a]n amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original proceedings." Fed. R. Civ. P. 15 (c)(1)(B). "An amended habeas petition . . . does not relate back (and thereby escape AEDPA's one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." *Mayle v. Felix*, 545 U.S. 644, 650 (2005). "The fact that

---

[2] The Court has taken into consideration the applicable tolling period attributed to Petitioner's properly filed § 440.10 motion in state court. *See* 28 U.S.C. § 2244(2).

[the] initial petition and the proposed amended claim relate to the same stage of the proceeding is insufficient to establish relation back." *Delutro v. United States*, No. 11-CV-2755, 2014 WL 4639198, at *5 (S.D.N.Y. Sept. 16, 2014) (citing *Gibson v. Artus*, 407 Fed. Appx. 517, 519 (2d Cir. 2010)).

Petitioner's new claims of ineffective assistance of counsel allege his attorney's failure to adequately investigate his case and obtain an expert witness in rape trauma. Dkt. ##16, 21. These claims are unrelated to the claims raised in his timely-filed Petition, which assert that trial counsel was ineffective for denying Petitioner his right to testify and his failure to object to the use of Petitioner's prejudicial nickname at trial. Dkt. #1.  Courts have routinely held that ineffective assistance of counsel claims do not relate back when alleging a different ground for ineffective assistance of counsel. *See Ross v. Racette*, No. 15-CV-06472, 2018 WL 1718057, at *4 (W.D.N.Y. Apr. 8, 2018), *appeal withdrawn*, No. 18-1371, 2018 WL 5786042 (2d Cir. Oct. 3, 2018) ("The fact that all of these claims assert some type of ineffective assistance of counsel is insufficient to warrant relation back.") (collecting cases); *Hiers v. Bradt*, No. 11–CV–0270, 2014 WL 6804252, at *6 (E.D.N.Y. Dec. 3, 2014) (finding ground for relief set forth in amended petition was dissimilar to claims of ineffective assistance asserted in the original petition and therefore did not relate back); *Jenkins v. Graham*, No. 06–CV–10200, 2009 WL 1119383, at *3 (S.D.N.Y. Apr. 23, 2009) (denying motion to amend petition because new claim for ineffective assistance of appellate counsel did not relate to facts alleged in original claim).

Accordingly, the Court should decline to consider the new ineffective assistance of counsel claims raised in his Motion to Amend.

**B.    Legal Sufficiency (Ground Two of the Petition)**

Petitioner claims that the evidence was legally insufficient to support the verdict because the prosecution "failed to prove as an element that Petitioner engaged in some sort of sexual contact with the victim." Dkt. #1 at 7.

Under the clearly established law set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979), a habeas petitioner "bears a very heavy burden" when challenging the legal sufficiency of his state criminal conviction, and a habeas court is required to consider the trial evidence in the light most favorable to the prosecution and uphold the conviction if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319 (emphasis in original). Further, a habeas court must defer to the assessments of the credibility of the witnesses that were made by the jury and may not substitute its view of the evidence for that of the jury. *See id.*; *Parker v. Matthews*, 567 U.S. 37, 42 (2012). Under this "rigorous standard," a "federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Wheel v. Robinson*, 34  F.3d 60, 66 (2d Cir. 1994) (quoting *Jackson*, 443 U.S. at 326). Moreover, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the

federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (quoting *Renico v. Lett*, 559 U.S. 766, 772-73 (2010)). Indeed, the Supreme Court has stated that "*Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference." *Coleman v. Johnson*, 566 U.S. 650, 651 (2012); *accord Parker*, 567 U.S. at 42.

Petitioner maintains that the prosecution failed to establish his guilt of first-degree course of sexual conduct against a child, first-degree rape, and child endangering, because it failed to establish, as it was required, that he had engaged in any sexual contact with S.M. The Appellate Division rejected this claim on the merits. *Dukes*, 122 A.D.3d at 1372.

The elements of first-degree course of sexual conduct against a child are: (1) over a period of time not less than three months in duration, (2) a person engages in two or more acts of sexual conduct, which includes at least one act of sexual intercourse, oral sexual conduct, anal sexual conduct or aggravated sexual contact, (3) with a child less than eleven years old. N.Y. Penal L. § 130.75(1)(a). A person is guilty of rape in the first degree when he or she engages in sexual intercourse with another person by forcible compulsion. N.Y. Penal L. § 130.35(1). A person is guilty of endangering the welfare of a child when he or she knowingly acts in a manner likely to be injurious to the physical, mental or moral welfare of a child less than seventeen years

old or directs or authorizes such child to engage in an occupation involving a substantial risk of danger to his or her life or health. N.Y. Penal L. § 260.10(1).

The trial evidence consisted of the testimony of the victim in this case, S.M., whose mother was dating Petitioner on and off over the course of several years. The prosecution also called a criminal investigator from the Penn Yan Police Department, and a child sexual abuse expert. T. 243-328.

S.M. testified that Petitioner's first sex act with her occurred in September 2001, when she was 8 years old. She recounted that after Petitioner had directed her to take a shower, he rubbed his penis against her anus and vagina for approximately 30 minutes. She remembered this because an episode of "Sponge Bob" was on television. Petitioner told her that "he was helping me to get clean, because I wasn't cleaning myself properly." T. 247-45, 263-64. S.M. further recounted that near her ninth birthday, in December 2001, petitioner engaged in sexual intercourse with her by inserting the tip of his penis into her vagina.[3] Petitioner told S.M. that if she told anyone, "he would take my presents away and tell the cops that I stole them." T. 249.

Several years later, when S.M. was a teenager, Petitioner forced her to have sexual intercourse with him about once a week. She specifically recalled an incident on July 4, 2008, when Petitioner was drinking with the downstairs neighbors. According to S.M., Petitioner came upstairs and directed S.M. into her mother's

---

[3] Under New York law, sexual intercourse has its "ordinary meaning and occurs upon any penetration, however slight." N.Y. Penal L. § 130.00(1).

bedroom and told her that they were going to have sex. When S.M. protested, Petitioner grabbed her, forcibly penetrated her and threatened to kill her if she screamed or reported his behavior. T. 251, 259, 271.

S.M. testified that during the summer of 2010, when she was 17 years old, Petitioner forced her to have sex with him two to three times per week. T. 254.

In September, 2010, Petitioner forced S.M. to perform oral sex on him by holding her mouth open "while he shoved his penis in." T. 257. S.M. testified that while she was being raped, Petitioner would "hold my arms down, because he would make me get on top of him." *Id.* She recalled that Petitioner "was always saying that he was trying to help me prepare for when I'm older - - when I go out and have sex with people so I knew what I was doing." *Id.*

After the September 2010, incident, S.M. told her friend, Melissa Allison, what had happened, "but it wasn't in full detail, because I knew I couldn't trust her that much." T. 257. Likewise, S.M. testified that she did not tell her mother sooner because her mother "was constantly breaking up with [Petitioner] and getting back together, and I didn't want to tell her, because I was afraid that she wasn't going to believe me." T. 259. An expert psychologist then testified about research related to disclosure issues of sexual abuse. T. 314-326. Specifically, the expert stated that "based on the research, most children who have been sexually abused do not disclose at all, do not report that abuse." T. 314. Of those who do report abuse, "[t]he research shows a gap, that it's

11

either typically very quickly after the first incident, or there's a significant delay before the disclosure." T. 315.

S.M.'s testimony established that Petitioner subjected her to sexual contact from the age of 8 through 17 and was therefore sufficient to support the guilty verdict for the sex crimes and, necessarily, the child endangerment charge. Although she was the sole witness to the crime, "the testimony of a single, uncorroborated eyewitness is generally sufficient to support a conviction." *United States v. Danzey*, 594 F.2d 905, 916 (2d Cir. 1979). Petitioner's claim that the prosecution failed to establish that he had made any sexual contact with S.M. appears to rest entirely upon his assertion that her testimony should not have been believed because of various inconsistencies. However, the purported inconsistencies were argued before the jury, and by its verdict, it chose to credit S.M.'s account of the abuse. As the jury is the sole arbiter of witness credibility, this Court sitting in habeas review must defer to that finding and may not substitute its view of the evidence for that of the jury. *See Bester v. Conway*, 778 F. Supp. 2d 339, 346 (W.D.N.Y. 2011) ("A habeas petitioner's contention that a witness' testimony was unworthy of belief is not reviewable in habeas proceedings since credibility determinations are the province of the jury.") (citing *Maldonado v. Scully*, 86 F.3d 32, 35 (2d Cir. 1996)); *Jackson v. Heath*, No. 10-CV-3449, 2010 WL 3075557, at *14 (S.D.N.Y. Aug. 6, 2010) ("The assessment of witness credibility lies solely within the province of the jury, and the jury is free to believe part and disbelieve part of any witness's testimony.") (quoting *United States v. Ware*, 577 F.3d 442, 447 (2d Cir. 2009)).

Under *Jackson*, a habeas court's role is simply to determine whether there is any evidence, if accepted as credible by the trier of fact, sufficient to sustain the conviction. *See Schlup v. Delo*, 513 U.S. 298, 330 (1995). The evidence presented at Petitioner's trial was thus sufficient to support the convictions, particularly given the deference required under *Jackson*. Because Petitioner cannot establish that the Appellate Division unreasonably rejected his legal insufficiency claim, the Court recommends that Ground Two of the Petition be dismissed.

### C.     Ineffective Assistance of Counsel (Ground Three of the Petition)

Petitioner claims he was denied the effective assistance of counsel because: (1) Petitioner was denied his right to testify at trial; and (2) his attorney failed to object to the prosecutor's use of his nickname. Dkt. #1 at 9-10.

The clearly established Supreme Court precedent for purposes of ineffective assistance of counsel claims is *Strickland v. Washington*, 466 U.S. 668 (1984), and its progeny. *See Williams*, 529 U.S. at 390. Under the *Strickland* standard, a petitioner cannot establish a Sixth Amendment violation of the right to effective assistance of counsel unless he shows both that: (1) trial counsel's representation "fell below an objective standard of reasonableness," measured under "prevailing professional norms," 466 U.S. at 688; and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* A federal habeas court's review

of state court adjudications of ineffective assistance of counsel claims is "'doubly deferential' in order to afford 'both the state court and the defense attorney the benefit of the doubt.'" *Woods v. Donald*, 575 U.S. 312, 316 (2015) (*per curiam*) (quoting *Burt v. Titlow*, 575 U.S. 12, 15 (2013)).  Thus, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

### 1.  Right to Testify

As summarized above, Petitioner raised this claim in his § 440 motion and again on appeal. S.R. 1-39, 271-331. Both state courts rejected Petitioner's claims on the merits. S.R. 47-50, 416-17.

"[A] defendant in a criminal case has the right to take the witness stand and to testify in his or her own defense." *Rock v. Arkansas*, 483 U.S. 44, 49, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987). In the context of ineffective assistance of counsel claims, the Second Circuit has explained:

> Although counsel should always advise the defendant about the benefits and hazards of testifying and of not testifying, and may strongly advise the course that counsel thinks best, counsel must inform the defendant that the ultimate decision whether to take the stand belongs to the defendant, and counsel must abide by the defendant's decision on this matter.
>
> Because the burden of ensuring that the defendant is informed of the nature and existence of the right to testify rests

> upon defense counsel, we conclude that this burden is a component of the effective assistance of counsel. As a result, any claim by the defendant that defense counsel has not discharged this responsibility—either by failing to inform the defendant of the right to testify or by overriding the defendant's desire to testify—must satisfy the two-prong test established in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), for assessing whether counsel has rendered constitutionally ineffective assistance.

*Brown v. Artuz*, 124 F.3d 73, 79 (2d Cir. 1997); *accord Nappy v. United States*, Nos. 13 CV 5888, 94 CR 656, 2014 WL 6792001, at *10 (S.D.N.Y. Nov. 21, 2014).

Nothing in the record suggests that Petitioner was unaware of his right to testify or that he was denied this right by defense counsel. Indeed, as the § 440 court observed, counsel, at the commencement of trial, provided the court with the name of the sole witness the defense planned to call, and it was not Petitioner. Counsel also asked the court, in Petitioner's presence, to indicate to the jury that Petitioner would not testify and to provide an instruction that no unfavorable inference should be drawn against Petitioner for declining to. *Id.* In a lengthy statement to the sentencing court, Petitioner proclaimed his innocence and stated, "I wanted to testify. My lawyer told me don't testify to put myself at the scene . . . ." S. 11.

Simply because Petitioner made the decision not to testify by following the advice of counsel does not equate to the denial of the right to testify. He has not provided any evidence to establish such a deprivation. Nothing in Petitioner's allegations, here or in the state courts below, suggests that counsel told Petitioner that he could not make the decision for himself. Assuming the truth of his allegation that

counsel told Petitioner "[he] is going to blow this case by getting on the witness stand," this does not establish "coercion," by counsel. S.R. 22. Petitioner's dissatisfaction with the outcome of his trial cannot from the basis of a claim of constitutional ineffectiveness.[4]

Finally, even assuming that counsel had rendered deficient performance by failing to advise Petitioner that whether to testify was his decision to make, this branch of the claim would still not provide a basis for habeas relief because petitioner could not establish prejudice under *Strickland.* As stated earlier, to satisfy the prejudice prong of the *Strickland* test, Petitioner must show that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different;" the probability must "undermine confidence in the outcome" of the trial. 466 U.S. at 689. Here, had Petitioner testified, he would have been exposed to cross-examination which would place before the jury proof that he had a prior felony conviction and two misdemeanor convictions.[5] The § 440 court observed as much and in doing so, did not unreasonably apply *Strickland.*

2.  <u>Prejudicial Use of Nickname</u>

Petitioner also argues that counsel was ineffective for failing to object to the prosecution's use of petitioner's nickname, "Rage." Dkt. #1 at 9-10.

---

[4] It is worth noting that counsel had previously negotiated a plea agreement by which the court committed to a plea of Attempted Course of Sexual Conduct with an eight-year determinate sentence of imprisonment and seven years of post-release supervision as a second sexual violent felony offender. Petitioner rejected that offer. P. 2-3.

[5] Those convictions were subject to a *Sandoval* compromise. H. 18-19.

Defense counsel called witness Melissa Allison, who had known S.M. since the sixth grade and had been friends with her, and who at one point lived in an apartment with S.M. and S.M.'s mother. She testified that Petitioner and S.M. had a father-daughter relationship and that she had seen no abuse take place. During the course of her testimony, Ms. Allison revealed that S.M. referred to Petitioner as "Dad" or by his nickname, "Rage." T. 336-45. The prosecutor thereafter briefly referenced Petitioner's nickname during Ms. Allison's cross-examination and during summation. T. 346, 350, 353, 378-82.

Although counsel did not object to the prosecutor's use of Petitioner's nickname, his failure to do so did not render his representation ineffective because Petitioner was not denied a fair trial as a result of the nickname's inclusion. First, the prosecutor did not comment on the nickname or relate the nickname to Petitioner's character. Nor did the prosecutor suggest that there was a connection between the nickname and the charged crimes. Under these circumstances, there was little likelihood that the prosecutor's use of Petitioner's nickname contributed to the jury's decision to convict him of sexually assaulting S.M. As counsel's failure to lodge an objection here did not prejudice Petitioner, he cannot establish a *Strickland* violation. *See United States v. Price*, 443 Fed. Appx. 576, 579 (2d Cir. 2011) (Petitioner failed to establish prejudice under *Strickland* where any objection to the use of the nickname "Crime" would not have had a reasonable probability of altering the result of the proceeding where the Government did not "overuse" the nickname) (citing *United States v. Farmer*, 583 F.3d 131, 146 (2d Cir. 2009) (prejudice likely in murder trial where

prosecution addressed the jury with "frequently repeated, gratuitous invocation" of defendant's nickname, "Murder"); *see also Hart v. Artus*, No. 09 CIV. 1032, 2012 WL 6628014, at *5 (S.D.N.Y. Dec. 20, 2012) ("even if defense counsel erred in inadvertently opening the door to Hart's nickname ["Mad Dog"], the impact of such a passing reference was likely minimal.")

In sum, both the CPL § 440 court and the Appellate Division reasonably applied *Strickland* in denying Petitioner's claim, and the Court respectfully recommends dismissal of Ground Three of the Petition.

### C.  Denial of Substitution of Counsel (Ground One)

Petitioner claims that the trial court improperly denied his request to replace his attorney two weeks before trial.  Dkt. #1 at 5.  Petitioner raised this claim on direct appeal, and it was rejected by the Appellate Division:

> Although defendant requested a new attorney several weeks before trial, the record demonstrates that, after an extensive colloquy with the court and a private conference with assigned counsel, defendant informed the court that his attorney answered his questions and that he was satisfied with his attorney's answers. When asked by the court whether he wanted his attorney to continue to represent him, defendant answered, "Yes, sir," and defendant did not thereafter request new counsel. Under the circumstances, we conclude that defendant withdrew his request for assignment of new counsel and thereby waived his present contention.

*Dukes*, 122 A.D.3d at 1371 (citation omitted).

Respondent argues that the appellate court's reliance on Petitioner's waiver to deny his claim provides an adequate and independent state law ground for its decision, precluding habeas review. Dkt. #9-1 at 13.

The adequate and independent state ground doctrine generally forecloses federal habeas review of a state court judgment when the state court rests its holding on a state law ground that is "'independent of the federal question and adequate to support the judgment.'" *Cotto v. Herbert*, 331 F.3d 217, 238 (2d Cir. 2003) (quoting *Coleman v. Thompson*, 501 U.S. 722, 729 (1991)). Courts in this Circuit have found that a petitioner's waiver of a claim precluding further review constitutes an adequate and independent state ground. *See Goodwine v. Lee*, No. 10CIV6019, 2016 WL 6840478, at *23 (S.D.N.Y. Feb. 10, 2016), *report and recommendation adopted as modified*, No. 10 CV 6019, 2016 WL 6834017 (S.D.N.Y. Nov. 17, 2016) ("In rejecting this claim on direct appeal, the Appellate Division found that '[t]he defendant's right to challenge the court's failure to give an expanded identification charge was waived by the withdrawal of his request for such an instruction at trial . . . .' This finding, which is supported by the record . . . constitutes an independent and adequate state ground for the denial of Petitioner's claim.") (citing *Brown v. Lord*, No. 00 Civ. 4642, 2003 WL 22670886 at *4 (E.D.N.Y. Oct. 20, 2003) (Appellate Division's finding that a defendant waived a jury instruction on extreme emotional disturbance precluded habeas review)); *see also Walker v. Brown*, No. 08-CV-1254, 2009 WL 2030618, at *11 (E.D.N.Y. July 10, 2009) (Appellate Division's finding that petitioner waived jury instruction following withdrawal of request was adequate and independent state ground).

19

Where, as here, the state court has dismissed a petitioner's federal claim on an adequate and independent state ground, habeas review of that claim is procedurally barred unless the petitioner can demonstrate either (1) cause for the default and prejudice attributable thereto; or (2) that the failure to consider the federal claim will result in a fundamental miscarriage of justice (i.e., a constitutional error has probably resulted in the conviction of someone who is actually innocent). *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Cause may be demonstrated with a showing that the factual or legal basis for a claim was not reasonably available to counsel or that some interference by state officials' made compliance impracticable or that the procedural default is the result of ineffective assistance of counsel. *Murray v. Carrier*, 477 U.S. 478, 488 (1986).

To the extent that petitioner's allegations of ineffective assistance of counsel could be used to demonstrate cause and prejudice, such claims are, as discussed above, without merit. Although Petitioner asserts that he is actually innocent, he has not supported his claim of actual innocence with any "new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Schlup*, 513 U.S. at 324. Rather, Petitioner submits unsworn "alibi" affidavits from friends and relatives. Dkt. ## 13, 14. The Court has reviewed these affidavits and conclude that they do not constitute the type of new, reliable evidence sufficient to establish that "no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Schlup*, 513 U.S. at 329. The affidavits consist of criticisms of Petitioner's trial counsel,

20

reference time periods not germane to the instant convictions, and, at most, reflect the affiants' disbelief of the victim's allegations. This is insufficient to satisfy the miscarriage of justice standard. *See, e.g., Colon v. Sheahan*, No. 13-CV-6744, 2016 WL 3919643, at *16-17 (S.D.N.Y. Jan. 13, 2016) (affidavits from "potential witnesses," including petitioner's parents and friends, were "not sufficient to shoulder the *Schlup* burden" because they included "no supporting proof, documentary or otherwise," were not from "disinterested" witnesses, and were insufficiently detailed and not probative of petitioner's whereabouts at the time of the crime), *adopted*, 2016 WL 3926443, at *7 (S.D.N.Y. July 14, 2016); *Philbert v. Brown*, No. 11-CV-1805, 2012 WL 4849011, at *7 (E.D.N.Y. Oct. 11, 2012) (rejecting claim of actual innocence to overcome procedural default, where new evidence consisted of affidavits from petitioner's "girlfriend and his girlfriend's mother," and one such affidavit "state[d] only a belief, as opposed to actual knowledge," as to petitioner's whereabouts at the time of the crime); *Desrosiers v. Phillips*, No. 05-CV-2941, 2006 WL 2092481, at *8 (E.D.N.Y. July 27, 2006) ("Generally, ... exculpatory affidavits [from friends] do not establish actual innocence, as they are not reliable.").

Accordingly, Petitioner has not overcome the procedural default and the Court recommends that Ground One of the Petition relating to the claim of substitution of counsel be dismissed.

**D.      Prosecutorial Misconduct (Ground Four of the Petition)**

Petitioner's final claim for relief alleges that the prosecutor's opening statement to the jury that he "punched the victim in the face was wholly unsupported by any evidence offered and undoubtedly confusing to the jury." Dkt. #1 at 10.

"Habeas review of prosecutorial misconduct claims is narrowly circumscribed. More than 'mere trial error' is required to grant relief." *Tucker v. Bennett*, 219 F. Supp. 2d 260, 268 (E.D.N.Y. 2002) (quoting *Tankleff v. Senkowski*, 135 F.3d 235, 252 (2d Cir. 1998)). Under Supreme Court precedent, any evaluation of prejudicial error resulting from inappropriate prosecutorial comments must be assessed in the context of the trial as a whole. *See United States v. Young*, 470 U.S. 1, 11–12 (1985). In making this evaluation, the Second Circuit has generally focused on three factors: "the severity of the misconduct, the measures adopted to cure the misconduct, and the certainty of conviction absent the misconduct." *United States v. Elias*, 285 F.3d 183, 190 (2d Cir. 2002).

The Appellate Division rejected Petitioner's claim on the merits. *Dukes*, 122 A.D.3d at 1372.

During opening statements, the prosecutor told the jury that she anticipated evidence establishing that Petitioner punched S.M. in the nose, resulting in a swollen nose and two black eyes. T. 235-36.

The prosecutor's reference to the allegation that Petitioner had punched S.M. was based on S.M.'s 2011 statement to Penn Yan Police. However, during her trial testimony, S.M. indicated that on July 4, 2010, Petitioner "swung the door open, and it bashed me in the face. And my nose was swollen, and I had two black eyes the next day." T. 252.  On cross-examination, defense counsel elicited clear testimony from S.M. that Petitioner had not punched her, but rather, he swung open a door, striking her nose. T. 277-84. S.M. explained that she had made a mistake when she reported the incident to the police, and that she had not corrected her account of the events until her trial testimony. T. 282-84.

At no point thereafter did the prosecutor state that Petitioner had punched S.M. During summation, the prosecutor alluded to S.M.'s testimony that Petitioner hit her in the nose with a door and that no one, including her mother, had taken her to the hospital. T. 379.

Petitioner cannot show that he "suffered actual prejudice because the prosecutor's comments . . .  had a substantial and injurious effect or influence in determining the jury's verdict." *Bentley v. Scully*, 41 F.3d 818, 824 (2nd Cir. 1994). In this case, the prosecutor's initial reference to S.M. being punched in the nose was brief and not a significant part of her opening statement to the jury. The prosecutor later corrected that statement in her closing remarks to reflect S.M. being hit in the nose with

a door by Petitioner and that no one took her to the hospital, including her mother.[6]

Under these circumstances, it is highly unlikely that the jury was misled or confused,

particularly in light of defense counsel's thorough cross-examination of S.M. regarding

the inconsistency. T. 277-84. As such, Petitioner cannot establish that he would not

have been convicted but for the improper statement. *See United States v. Elias*, 285

F.3d 183, 192 (2d Cir. 2002).

      Petitioner's prosecutorial misconduct claim is without merit. Because the

Appellate Division's decision did not run afoul of clearly established Supreme Court law,

the Court recommends dismissal of Ground Four of the Petition.


## Conclusion

      Based on the foregoing, it is recommended that Petitioner's application for

a writ of habeas corpus pursuant to 28 U.S.C. § 2254 be denied, and the Petition be

dismissed.


      Pursuant to 28 U.S.C. § 636(b)(1), it is hereby


      **ORDERED**, that this Report and Recommendation be filed with the Clerk

of the Court.

---

[6] In context, the prosecutor's remark reads: "[The victim] was protecting herself because nobody protected her her whole childhood; her whole life . . . . How even being hit in the nose by a door, by this man named Rage, nobody took her to the hospital. She didn't have a Mother to take her to the hospital. Her Mother did not do that. That is her hellish childhood."  T.  379.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report and Recommendation in accordance with the above statute, Fed. R. Civ. Proc. 72(b) and Local Rule 72(b).

The District Court ordinarily will refuse to consider on de novo review arguments, case law and evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance. *See, e.g., Patterson-Leitch Co., Inc. v. Massachusetts Municipal Wholesale Electric Co.*, 840 F.2d 985, 990-91 (1st Cir. 1988).

Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order. *Thomas v. Arn*, 474 U.S. 140 (1985); *Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." Failure to comply with the provisions of Rule 72(b) may result in the District Court's refusal to consider the objection.

Let the Clerk send a copy of this Report and Recommendation to Petitioner and Respondent.

**ALL OF THIS IS SO ORDERED.**

DATED:       Buffalo, New York
              April  28, 2020

*S/ H. Kenneth Schroeder, Jr.*
**H. KENNETH SCHROEDER, JR.**
**United States Magistrate Judge**